## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**TERESA ALEXANDER,**                    **CASE NO.  7:21-cv-86(HL)**

    **Plaintiff,**

**v.**

**THOMAS UNIVERSITY, INC., and**
**HONEY LAKE CLINIC, INC.,**

    **Defendants.**
_____/

## AMENDED COMPLAINT

Plaintiff, TERESA ALEXANDER, hereby sues Defendants, THOMAS

UNIVERSITY, INC., and HONEY LAKE CLINIC, INC., and alleges:

## JURISDICTION

1.      This is an action brought under the Americans with Disabilities Act,

codified at 42 U.S.C. § 12101, et seq., and under the Rehabilitation Act, codified at

29 U.S.C. §794 et seq., and 42 U.S.C. §1981a.

2.      This is an action involving claims which are, individually, in excess of

Seventy-Five Thousand Dollars ($75,000.00).

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, TERESA ALEXANDER, has

been a resident of the State of Florida and was enrolled in the educational programs

of Defendants THOMAS UNIVERSITY, INC., and HONEY LAKE CLINIC, INC. Plaintiff is a member of a protected class due to her actual or perceived mental disability and/or record of impairment of which both Defendants were aware. Further, Plaintiff reported Defendants' unlawful practices and has been retaliated against thereafter by both Defendants.

4.      At all times pertinent hereto, Defendant, THOMAS UNIVERSITY, INC., has been organized and existing under the laws of the state of Georgia and was conducting business within the geographical boundaries of this Court.  At all times pertinent to this action, Defendant THOMAS UNIVERSITY, INC., has been an educational institution as that term is used under the applicable laws identified above.  Upon information and belief, Defendant THOMAS UNIVERSITY, INC., receives federal funds to support the program that Plaintiff was enrolled in and/or for Plaintiff's participation in its program.

5.      At all times pertinent hereto, Defendant, HONEY LAKE CLINIC, INC., has been organized and existing under the laws of the State of Florida. Moreover, Defendant HONEY LAKE CLINIC, INC., accepts practicum students from private institutions such as Defendant THOMAS UNIVERSITY, INC., as well as from public institutions such as Florida State University.  At all times pertinent to this action, Defendant has been associated with Defendant THOMAS UNIVERSITY, INC., an educational institution. Upon information and belief,

2

Defendant HONEY LAKE CLINIC, INC., receives federal funds to support the program that Plaintiff was enrolled in and/or for Plaintiff's participation in its program.

## CONDITIONS PRECEDENT

6.     Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

7.     Plaintiff began her education with Defendant THOMAS UNIVERSITY, INC. (hereinafter "UNIVERSITY"), in its Master's degree program for Clinical Mental Health and Clinical Rehabilitation Counseling on or about June 2018 until her unlawful dismissal on or around August 2019. Plaintiff began her practicum course (which was required by Defendant UNIVERSITY) with Defendant HONEY LAKE CLINIC, INC. (hereinafter "HONEY LAKE"), on or about June 2, 2019 until her unlawful dismissal on or around July 11, 2019.

8.     Plaintiff has been subjected to disparate treatment, as well as subjected to different terms and conditions of her education, and was held to a different standard because of an actual or perceived mental disability and/or record of impairment, and she has been retaliated against after reporting this discrimination.

9.     Plaintiff is an individual that has a disability as defined under the Americans with Disabilities Act (ADA). Plaintiff has the mental impairments

3

dyslexia and dysgraphia that substantially limit one or more of her major life activities, including but not limited to thinking, concentrating, focusing, reading, learning, and working.

10.   On or about June 6, 2018, Plaintiff requested the reasonable accommodations of, including but not limited to, extra time on tests and audiobooks in an email to Defendant UNVERSITY's Director of Student Disability Support Service and Division Chair of Counseling and Psychology Dr. Pauline Patrick.

11.   On or about July 16, 2018, Dr. Patrick finally responded to Plaintiff in an email and asked her for supporting medical documentation to approve her for accommodations. Plaintiff promptly returned all the supporting medical documentation. Defendant UNIVERSITY did grant Plaintiff the accommodation of extra time on tests; thus acknowledging her disability; however, Defendant UNIVERSITY denied her audiobooks.

12.   Plaintiff requested the reasonable accommodation of audio books for her classes because audiobooks help her with comprehension and efficiency. Defendant UNIVERSITY denied Plaintiff's request of audiobooks because Plaintiff is not blind; thus, Defendant UNIVERSITY treated Plaintiff differently than students with physical disabilities who request accommodations.

13.   Despite its knowledge of Plaintiff's dyslexia and dysgraphia, Defendant UNIVERSITY disseminated the opinion that Plaintiff had poor writing

4

skills. For example, on or around March 6, 2019, Dr. Pauline Patrick told Defendant UNIVERSITY employees Program Director Dr. Cristina Jones and Academic Advisor Donya Manning in an email that Plaintiff's professional writing was poor. After Dr. Patrick's email, Defendant UNIVERSITY began to scrutinize Plaintiff's writing assignments, causing Plaintiff extreme stress which exacerbated her chronic medical condition.

14.    Plaintiff was required to take a practicum course as part of Plaintiff's education with Defendant UNIVERSITY. On or about May 2019, Plaintiff requested Defendant HONEY LAKE, a mental health facility, to allow her to complete her course in its facility. Defendant HONEY LAKE accepted Plaintiff as a practicum student on or about June 1, 2019.

15.    On or about June 2, 2019, Plaintiff began her practicum course at Defendant HONEY LAKE. On or about June 4, 2019, Plaintiff told Defendant HONEY LAKE's Clinical Director Thomas Smith that she had dyslexia and dysgraphia which affected her ability to write. She told Smith that she had her own laptop and writing tools which would assist her with her writing. She then requested the reasonable accommodations of extra time to turn in assignments as well as someone to check over her writing. Defendant HONEY LAKE refused to engage in the interactive process with Plaintiff, and Smith responded to her request by stating that he would get [Defendant UNIVERSITY] to "fix that."

5

16.     On or about June 5, 2019, Defendant HONEY LAKE's Assistant Clinical Director Jessica Greenhalgh told Clinical Director Smith that Plaintiff's notes which she uploaded into its computer system (known as KUPI) were not good. Plaintiff's disability did affect her ability to write notes, as Defendant HONEY LAKE was aware. No one within Defendant HONEY LAKE offered to accommodate Plaintiff or show her how to address her mistakes; instead, Defendant HONEY LAKE revoked her ability to get into the computer system. Plaintiff then had no way of uploading her progress notes within Defendant HONEY LAKE.

17.     Defendant HONEY LAKE therefore did not allow Plaintiff sufficient access to its educational facilities; however, it allowed its other practicum student Jessica l/n/u, who upon information and belief is not disabled with dyslexia or dysgraphia, to have access to its KUPI computer system to upload her progress notes.

18.     Defendant HONEY LAKE's actions humiliated and embarrassed Plaintiff, and she was afraid to oppose this mistreatment to Defendant HONEY LAKE for fear of losing her place in the practicum course. Plaintiff then began doing extra work, including but not limited to keeping two (2) sets of notes. She began sending one (1) set of progress notes to Defendant UNIVERSITY, and she saved the other set of progress notes to her laptop in order to show Defendant HONEY LAKE in the event Defendant HONEY LAKE asked to see her notes, which it never did.

6

19.     On or about June 2019, Plaintiff reported to Defendant UNIVERSITY's Program Director Cristina Jones that Defendant HONEY LAKE was treating her differently than other students by not allowing her to upload her notes into its system. Jones told her that Defendant UNIVERSITY would help her with her notes, but no changes were made at Defendant HONEY LAKE. Furthermore, Defendant UNIVERSITY only checked over Plaintiff's notes approximately three (3) times.

20.     Plaintiff did all the work that Defendant HONEY LAKE asked her to do, including but not limited to attending group counseling sessions with patients. Plaintiff made sure to ask multiple therapists at Defendant HONEY LAKE if her work was sufficient. These therapists always told Plaintiff that she was doing well.

21.     In or around July 11, 2019, Defendant HONEY LAKE unexpectedly terminated Plaintiff from its Clinic in an email. Defendant HONEY LAKE did not provide a reason for her termination. At the time of Plaintiff's termination, she had already completed sixty-six (66) hours of her practicum course, and had only thirty-four (34) hours remaining wherein she would have completed the course.  Defendant HONEY LAKE'S action severely damaged Plaintiff in that she was not able to complete a required course for her degree with only three (3) weeks left in the course. Defendant HONEY LAKE's unwarranted and untimely termination made it extremely unlikely that Plaintiff would find another practicum site.

7

22.     Plaintiff opposed the termination by Defendant HONEY LAKE in an email written to Dr. Smith, on or around July 12, 2019, and requested to be given a reason for her termination. Dr. Smith would not give her a reason, and simply told her to ask Defendant UNIVERSITY Program Director Dr. Cristina Jones why she was fired. This shows that Dr. Jones, and thus Defendant UNIVERSITY, was, at least in part, responsible for Plaintiff's termination from Defendant HONEY LAKE.

23.     Plaintiff opposed this termination by Defendant HONEY LAKE to Defendant UNIVERSITY on or around July 12, 2019. Defendant UNIVERSITY's Program Director Jones told Plaintiff on or around July 12, 2019 that Defendant HONEY LAKE's Clinical Director Smith had called Jones prior to her termination to complain about Plaintiff, and so Jones told Smith to fire Plaintiff. Thus, Defendant UNIVERSITY not only failed to advocate for the disabled student Plaintiff, Defendant UNIVERSITY was the cause, at least in part, of Plaintiff's termination from Defendant HONEY LAKE.

24.     On or about July 12, 2019, Plaintiff opposed the termination by Defendant HONEY LAKE to Defendant UNIVERSITY's Program Director Jones. Jones then told Plaintiff that Defendant HONEY LAKE's Clinical Director Smith complained about her writing. Plaintiff told Jones that was impossible because Smith had never looked at her writing, as he did not allow her to write in Defendant HONEY LAKE's computer system.

8

25.    On or about July 15, 2019, Plaintiff sent Defendant UNIVERSITY Program Director Cristina Jones an email that showed that Defendant HONEY LAKE did not provide her any opportunity to utilize her skills, and that Dr. Smith was spreading false allegations about her. This email showed that Defendant HONEY LAKE gave her no clients, and thus failed to provide her equal access to its educational facilities, from on or about June 3, 2019 throughout July 9, 2019.

26.    On or around July 18, 2019, Defendant UNIVERSITY retaliated against Plaintiff for her reporting of disparate treatment when it summoned Plaintiff to a remediation session. On or around that same date, Plaintiff requested that Defendant UNIVERSITY provide her with an advocate from its Student Disability Support Service Center. Defendant UNIVERSITY denied her this reasonable request. Plaintiff felt afraid to go to this retaliatory remediation session alone based on Defendant UNIVERSITY's past behavior towards her. Therefore, Plaintiff was forced to bring her brother, David Alexander, to serve as her disability advocate even though he has no training as a disability specialist.

27.    No resolution was made at this meeting. Defendant UNIVERSITY failed to sufficiently engage in the interactive process with Plaintiff, and refused to allow her to finish her thirty-four (34) remaining practicum hours at a different site. Defendant UNIVERSITY told her that she would be receiving an "Unsatisfactory" for her practicum course despite having an "A" in the course up to the date of her

9

termination because she lacked the requisite hours. However, the reason she lacked the requisite hours was due to Defendant UNIVERSITY and Defendant HONEY LAKE's disparate treatment of her based on her disability. Plaintiff requested the reasonable accommodation of receiving an "Incomplete" for her practicum course which would mean she could finish the thirty-four (34) hours at a different practicum site without having to re-take the entire course which would include the sixty-six (66) hours she had already completed. Defendant UNIVERSITY denied her this reasonable request for an accommodation.

28.    On or around July 19, 2019, Plaintiff contacted Defendant HONEY LAKE in an attempt to discover more information regarding her unexplained termination. Defendant HONEY LAKE refused to respond. On or around that same date, in an email, Defendant UNIVERSITY reprimanded Plaintiff for her attempt to contact Defendant HONEY LAKE, and told her condescendingly that she needed to stop engaging in unprofessional behavior.

29.    On or around August 1, 2019, Plaintiff reported in an email to Defendant UNIVERSITY's President, Dr. James Sheppard, specifically and without limitation that Defendant UNIVERSITY discriminated against her and harassed her; that she requested help from Dr. Jones and Vice President of Academic Affairs Dr. John Meis for her disability and never received help and instead was retaliated against; that Dr. Jones had Dr. Smith terminate her from the practicum site at

10

Defendant HONEY LAKE; there was no documentation of any wrongdoing on her part at Defendant HONEY LAKE which would warrant termination; and that protocol was not followed prior to her termination from Defendant HONEY LAKE. She further requested the reasonable accommodation of receiving an "Incomplete" instead of an "Unsatisfactory" from her practicum site. President Sheppard took no corrective action and instead told Plaintiff to go to Defendant UNIVERSITY's Human Resources department.

30.    Subsequently, and in retaliation for her reports of discrimination, on or sometime before August 16, 2019, Defendant UNIVERSITY effectively dismissed Plaintiff from its program. Defendant UNIVERSITY wrote in an email to Plaintiff that she was being forced to complete an Action Plan "in order for her to *return* to Thomas University." SEE EXHIBIT A. In the Action Plan, Defendant UNIVERSITY specifically and without limitation required Plaintiff to complete additional coursework in writing classes even though the courses were not required for Plaintiff's degree. The mandated classes were writing intensive and Defendant assigned them to her due to her dyslexia and/or dysgraphia. Other students who were not disabled did not have complete this additional coursework to remain in Defendant UNIVERSITY's program.

31.    It was only after Plaintiff reported the discrimination to Defendant UNIVERSITY President Sheppard that Defendant UNIVERSITY demanded she

take remedial classes or she would not be allowed to remain in the program. Prior to her report to its President, Defendant UNIVERSITY only suggested that she take classes to help her with her writing when Plaintiff pleaded for extra help multiple times.

32.    Moreover, the Action Plan required Plaintiff to specifically and without limitation: (1) maintain an "A," "B," or "S" as her grade in each course throughout her studies; (2) maintain a cumulative GPA of 3.0 throughout her graduate studies; (4) agree to audit and complete all coursework in two courses not required for her degree and agree to successfully complete one course not required for her degree; (5) completely retake her practicum course and complete all 100 hours despite the fact that she already completed sixty-six hours; (6) meet with her academic advisor weekly; (7) commit herself to studying a minimum of three hours per week for each course; (8) request tutoring or additional help for any courses in which her overall grade falls below a "B" or an "S;" (9) meet with her professors as requested and notify them quickly if she is having difficulty in any course; (10) understand she may only have this one Action Plan during her time in the program; and (11) if she earns a "C" or a "U" or lower in any course she will never be able to re-enroll in any program at Defendant UNIVERSITY. SEE EXHIBIT B.

33. Defendant UNIVERSITY's demanding and rigid Action Plan tailored specifically for Plaintiff was clearly an act of retaliation and punishment for Plaintiff's reports of its disparate treatment of her to its President, Dr. Sheppard.

34. Plaintiff is a stellar student, with a 3.5 GPA, but Defendant UNIVERSITY imposed harsh requirements on her that it did not impose on non-disabled students, and then dismissed her. Defendant HONEY LAKE revoked privileges from her that it did not revoke from non-disabled students, and then dismissed her with no reason given.

35. Despite Plaintiff's clarity and insistence in communicating her need for more accommodation, Defendant UNIVERSITY and Defendant HONEY LAKE failed to grant her requests. Instead, Defendants continued in disparate treatment of Plaintiff and complained about Plaintiff's writing issues which were directly impacted by the failure of Defendants to take appropriate and adequate action on behalf of Plaintiff. Plaintiff was continually mistreated and retaliated against, which eventually resulted in Plaintiff's unjustified termination and/or dismissal.

36. Plaintiff has been damaged mentally, emotionally and financially as a result of Defendants' actions, and the possible permanent barrier which has been imposed on Plaintiff's education is the direct result of Defendant UNIVERSITY and Defendant HONEY LAKE's disparate treatment, failure to provide reasonable accommodations, and failure to engage in the interactive process.

13

37.    Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## DISABILITY DISCRIMINATION
### (Brought by Plaintiff Against Defendant UNIVERSITY)

38.    Paragraphs 1 through 37 above are re-alleged and incorporated herein.

39.    This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, specifically 42 U.S.C Subchapter III, Public Accommodations and Services Operated by Private Entities, codified at §§ 12181-12189.

40.    Defendant is a public accommodation as that term is used under the applicable statutes referenced above.

41.    Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's education with Defendant, Plaintiff was treated differently than similarly situated students who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

42.     Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected a term, condition, or privilege of

14

Plaintiff's education with Defendant as those terms are used in the applicable statutes.

43.    Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

44.    In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

45.    The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued education with Defendant. The events set forth herein led, at least in part, to Plaintiff's dismissal from its educational program.

46.    Defendant's acts and omissions constituted intentional discrimination and unlawful practices based upon disability or perceived disability, under the laws cited herein.

47.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring

15

at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief under this count, as well as attorney's fees.

## COUNT II
## ADA RETALIATION
### (Brought by Plaintiff Against Defendant UNIVERSITY)

48.     Paragraphs 1 through 37 above are re-alleged and incorporated.

49.     Defendant is a public accommodation as that term is used under the applicable statutes referenced above.

50.     This count sets forth a claim for unlawful retaliation under 42 U.S.C §12203.

51.     Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices or because Plaintiff made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under 42 U.S.C. §12101, et seq. and adverse actions were then taken against Plaintiff.

52.     Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq or encouraging another to do so.

53.     The foregoing unlawful actions by Defendant were purposeful.

54.     Because of Plaintiff's reporting, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's dismissal.

16

55.     Plaintiff became a member of a protected class after reporting Defendant's unlawful practices and was subject to retaliation thereafter. There is a causal connection between the reporting of the unlawful practices and the adverse actions taken thereafter, including without limitation dismissal from the program.

56.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief and attorney's fees under this count.

**COUNT III**
**<u>VIOLATION OF THE REHABILITATION ACT</u>**
**<u>DISABILITY/ HANDICAP DISCRIMINATION</u>**
**(Brought by Plaintiff Against Defendant UNIVERSITY)**

57.     Paragraphs 1 through 37 are incorporated herein by reference. This is an action against Defendant for discrimination based on handicap and/or disability.

58.     Plaintiff actively or perceptively suffered from a physical or mental disability that substantially limits one or more of Plaintiff's major life activities and/or Plaintiff has a record of such impairment.

17

59.     Defendant is a university subject to the requirements under the Rehabilitation Act, codified at 29 U.S.C. §794 et seq., because, under information and belief, Defendant was receiving federal funds at the time of its discrimination against Plaintiff.

60.     Defendant, solely because of Plaintiff's handicap/disability, excluded Plaintiff's participation in, denied Plaintiff the benefits of, or subjected Plaintiff to discrimination under a program or activity as defined in the relevant statute. This was accomplished through Defendant's agents, apparent agents, and employees.

61.     Defendant took action against Plaintiff because of Plaintiff's disabling condition, Alternatively, Defendant perceived Plaintiff to be disabled and took action against her as a result thereof and/or refused to reasonably accommodate her.

62.     There is no legitimate reason that has been offered by Defendant nor can there be any legitimate reason for the adverse treatment of Plaintiff.

63.     Defendant knew or should have known of these conditions as they were open and notorious and well known to Defendant. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning the actions and inactions affecting Plaintiff.

64.     Defendant harbored ill-motives and intent to cause disparate and retaliatory treatment of Plaintiff.

18

65.    Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees thereby causing foreseeable harm to Plaintiff's rights set forth herein.

66.    As a direct and proximate cause of Defendant's actions described above, Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including lost wages, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages. These damages have occurred in the past, are occurring at present and will continue in the future.  Plaintiff is entitled to injunctive/equitable relief and compensatory damages under this count.

## COUNT IV
## DISABILITY DISCRIMINATION
### (Brought by Plaintiff Against Defendant HONEY LAKE)

67.    Paragraphs 1 through 37 above are re-alleged and incorporated herein.

68.    This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, specifically 42 U.S.C Subchapter III, Public Accommodations and Services Operated by Private Entities, codified at §§ 12181-12189.

19

69.    Defendant is a private entity as that term is used under the applicable statutes referenced above.

70.    Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's educational experience with Defendant, Plaintiff was treated differently than similarly situated students who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

71.     Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected a term, condition, or privilege of Plaintiff's educational experience with Defendant as those terms are used in the applicable statutes.

72.    Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

73.    In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

74.    The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued educational experience with Defendant. The

20

events set forth herein led, at least in part, to Plaintiff's dismissal from its educational program.

75.    Defendant's acts and omissions constituted intentional discrimination and unlawful practices based upon disability or perceived disability, under the laws cited herein.

76.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief under this count, as well as attorney's fees.

**COUNT V**
**ADA RETALIATION**
**(Brought by Plaintiff Against Defendant HONEY LAKE)**

77.    Paragraphs 1 through 37 above are re-alleged and incorporated.

78.    Defendant is a private entity as that term is used under the applicable statutes referenced above.

79.    This count sets forth a claim for unlawful retaliation under 42 U.S.C §12203.

80.     Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices or because Plaintiff made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under 42 U.S.C. §12101, et seq. and adverse actions were then taken against Plaintiff.

81.     Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq or encouraging another to do so.

82.     The foregoing unlawful actions by Defendant were purposeful.

83.     Because of Plaintiff's reporting, Plaintiff was the victim of retaliation, as relayed in part above, including specifically and without limitation Plaintiff's dismissal.

84.     Plaintiff became a member of a protected class after she reported Defendant's unlawful practices and was subjected to retaliation thereafter. There is a causal connection between the reporting of the unlawful practices and the adverse actions taken thereafter, including specifically and without limitation dismissal from the program.

85.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages,

loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief and attorney's fees under this count.

### COUNT VI
### <u>VIOLATION OF THE REHABILITATION ACT</u>
### <u>DISABILITY/ HANDICAP DISCRIMINATION</u>
### (Brought by Plaintiff Against Defendant HONEY LAKE)

86.     Paragraphs 1 through 37 are incorporated herein by reference. This is an action against Defendant for discrimination based on handicap and/or disability.

87.     Plaintiff actively or perceptively suffered from a physical or mental disability that substantially limits one or more of Plaintiff's major life activities and/ or Plaintiff has a record of such impairment.

88.     Defendant is a corporation subject to the requirements under the Rehabilitation Act, codified at 29 U.S.C. §794 et seq., because, under information and belief, Defendant was receiving federal funds at the time of its discrimination against Plaintiff.

89.     Defendant, solely because of Plaintiff's handicap/disability, excluded Plaintiff's participation in, denied Plaintiff the benefits of, or subjected Plaintiff to discrimination under a program or activity as defined in the relevant statute. This was accomplished through Defendant's agents, apparent agents, and employees.

90.     Defendant took action against Plaintiff because of Plaintiff's disabling condition. Alternatively, Defendant perceived Plaintiff to be disabled and took action against her as a result thereof and/or refused to reasonably accommodate her.

91.     There is no legitimate reason that has been offered by Defendant nor can there be any legitimate reason for the dismissal of Plaintiff.

92.     Defendant knew or should have known of these conditions as they were open and notorious and well known to Defendant. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning the actions and inactions affecting Plaintiff.

93.     Defendant harbored ill-motives and intent to cause disparate and retaliatory treatment of Plaintiff.

94.     Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees thereby causing foreseeable harm to Plaintiff's rights set forth herein.

95.     As a direct and proximate cause of Defendant's actions described above, Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including lost wages, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and

24

other damages. These damages have occurred in the past, are occurring at present and will continue in the future.  Plaintiff is entitled to injunctive/equitable relief and compensatory damages under this count.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

25

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the

circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,


/s/ Jim Garrity
Jim Garrity [GBN 121837]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
jim@jimgarritylaw.com

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been
served upon all counsel of record by CM/ECF this 19th day of August, 2021.

/s/ Jim Garrity
Jim Garrity

26

# EXHIBIT A

 Gmail

Teresa Alexander <talexand2001@gmail.com>

---

## Fall Registration

7 messages

---

**Kristin Brooks** <kbrooks@thomasu.edu>                                    Fri, Aug 16, 2019 at 2:45 PM
To: "talexand2001@gmail.com" <talexand2001@gmail.com>

Good afternoon!

My name is Kristin Brooks and I will be your Academic Advisor here at Thomas University. I look forward to working with you.

Attached you will find a copy of your Action Plan that has to be signed in order for you to return to Thomas University.

As part of your Action Plan, we are requiring you to audit and complete the coursework in BUS 390 and SWK 350 at no expense to yourself. We are requiring that you also successfully complete RSC 507.

After you review and sign the attached plan, I will enroll you into the courses mentioned above.

All the best,

Kristin

**Kristin Brooks** | Director of Student Success

Thomas University

1501 Millpond Rd.

Thomasville, GA 31792

www.thomasu.edu

---

📄 **Fall 19 Action Plan.pdf**

# EXHIBIT B

Action Plan for Academic Success
Thomas University
2019

**Student's Name: Teresa Alexander**

**Major: Master's in Clinical Mental Health & Clinical Rehabilitation Counseling**

1. My final grade during the Summer semester for RCE 680 was below the academic standard for a graduate level student.

2. To improve my academic standing with Thomas University, I must maintain an "A," "B," or "S" as my grade in each course throughout my studies.

3. I must maintain a minimum cumulative GPA of 3.0 throughout my graduate studies.

4. With my goal of returning to good academic standing at Thomas University, I will:

   - Agree to audit and complete all coursework in the following courses: **BUS 390 Professional Communication, SWK 350 Social Work Practice with Individuals: Generalist Practice I**
   - Agree to take the following course: **RSC 507 Scholarly Writing**
   - Upon successful completion of the above retake the following course: **RCE 680 Counseling Practicum in Spring 2020**
   - Meet with my academic advisor weekly by email, in person, by telephone, or as needed.
   - Commit myself to studying a minimum of three hours per week for each course, including accessing the library and/or Academic Resource Center.
   - Request tutoring or additional help for any courses in which my overall grade falls below a "B" or "S."
   - Meet with my professors as requested and notify them quickly if I am having difficulty in any course.
   - Utilize the tips provided for Academic Success at Thomas University.
   - Follow all academic guidelines, policies, and procedures.

5. I understand I am only able to have one Action Plan during my time in this program. If I earn a C/U or lower in **any** course between now and graduation, I will not be able to return to the Clinical Mental Health and Clinical Rehabilitation Counseling program or be reenrolled at Thomas University.

_____    **Date:**
**Student**


_____    **Date:**
**Advisor**


_____    **Date:**
**Division Chair**