## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**TERESA ALEXANDER,**

     Plaintiff,

v.

**THOMAS UNIVERSITY, INC.,**

     Defendant.

Civil Action No. 7:21-CV-86 (HL)

## ORDER

Plaintiff Teresa Alexander has a documented learning disability that impacts the quality of her reading and writing. Plaintiff made Defendant Thomas University, Inc. aware of these limitations upon entering a master's degree program in June 2018. Defendant provided limited accommodations for Plaintiff's disability for her course work. However, Plaintiff alleges Defendant did not ensure those same accommodations when she began a required practicum course. Plaintiff's inefficiency at entering clinical progress notes resulted in her termination from the practicum program and impeded her ability to complete her degree. Plaintiff alleges that despite repeated efforts to obtain appropriate accommodations, Defendant refused her assistance and instead imposed additional academic requirements that were not expected of degree participants without learning disabilities. Plaintiff filed this lawsuit alleging Defendant

1

discriminated and retaliated against her in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189; Title V of the ADA, 42 U.S.C. § 12203; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Before the Court is Defendant's Motion for Judgment on the Pleadings (Doc. 41). Defendant moves the Court to dismiss Plaintiff's claims with prejudice because Plaintiff has alleged no viable claim for relief. Upon review of the pleadings the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion. The Court concludes Plaintiff's Amended Complaint states a plausible claim for compensatory damages under § 504 of the Rehabilitation Act. Plaintiff's remaining claims under § 504 and Titles III and V of the ADA are dismissed with prejudice as explained below.

## I.    BACKGROUND

Plaintiff Teresa Alexander enrolled in Defendant Thomas University, Inc.'s master's degree program for Clinical Mental Health and Clinical Rehabilitation Counseling in June 2018. (Doc. 9, ¶ 7). Plaintiff has dyslexia and dysgraphia. (Id. at ¶ 9). According to Plaintiff, these conditions limit her ability to think, concentrate, focus, read, learn, and work. (Id.). Plaintiff requested accommodations from Defendant to address her learning disability, including extra time on tests and audiobooks. (Id. at ¶ 10). After reviewing Plaintiff's supporting medical documentation, Defendant agreed to provide Plaintiff

additional time for tests but denied her request for audiobooks because she is not visually impaired. (Id. at ¶¶ 11-12).

Plaintiff's degree program required her to complete a practicum course. (Id. at ¶ 14). Plaintiff began her practicum at Honey Lake Clinic, Inc. ("Honey Lake"),[1] a mental health facility, on June 2, 2019. (Id. at ¶¶ 14-15). Plaintiff informed Honey Lake's clinical director about her learning disability and her writing limitations. (Id. at ¶ 15). Plaintiff told the clinical director she had tools available to assist with her writing, including a laptop and other writing tools, but requested Honey Lake also provide her additional time to return assignments and appoint someone to proofread her writing. (Id.). The clinical director replied he would get Defendant to "fix that." (Id.).

On June 5, 2019, Honey Lake's assistant clinical director complained to the clinical director about the poor quality of Plaintiff's written progress notes. (Id. at ¶ 16). Plaintiff alleges no one at Honey Lake addressed the problem with her notes and offered no accommodation. (Id.). Instead, Honey Lake revoked Plaintiff's access to the clinic's computer system, eliminating Plaintiff's ability to upload her progress notes. (Id.).

Plaintiff began keeping two sets of progress notes. (Id. at ¶ 18). She saved one set to her laptop and sent the other to Defendant. (Id.). She complained to

---

[1] Plaintiff's Amended Complaint includes claims against Honey Lake. Plaintiff voluntarily dismissed the mental health clinic as a party to this action on April 25, 2022. (Doc. 36).

Defendant's program director that Honey Lake was treating her differently than the other practicum students. (Id. at ¶ 19). The program director reassured Plaintiff that Defendant would assist her with her notes, but Defendant reviewed Plaintiff's notes on only three occasions. (Id.).

Honey Lake terminated Plaintiff's practicum without explanation on July 11, 2019. (Id. at ¶ 21). Plaintiff had completed sixty-six hours of the course and had thirty-four hours remaining. (Id.). With only three weeks left in the course, Plaintiff alleges it was unlikely she could find another practicum site to complete the practicum requirements. (Id.). Plaintiff opposed her termination to Defendant on July 12, 2019, and again on July 15, 2019, asserting that Honey Lake could not have evaluated her writing as the clinic would not permit her access to the computer system and that the clinic failed to provide her with the opportunity to utilize her skills and spread false information about her. (Id. at ¶¶ 24-25).

Defendant summoned Plaintiff to a remediation session on July 18, 2019. (Id. at ¶ 26). Plaintiff alleges Defendant scheduled the session in retaliation for Plaintiff's report of disparate treatment by Honey Lake. (Id.). Plaintiff requested appointment of an advocate from Defendant's Student Disability Support Service Center. (Id.). Defendant denied Plaintiff's request. (Id.). Plaintiff's brother, who has no training as a disability specialist, served as her advocate. (Id.).

Plaintiff was dissatisfied with the outcome of the remediation session. (Id. at ¶ 27). Despite Plaintiff having maintained an "A" average in her practicum

course prior to her termination, Defendant informed Plaintiff she would be receiving an "Unsatisfactory" for the course because she lacked the requisite hours. (Id.). Plaintiff argued to Defendant that Honey Lake's disparate treatment was the reason she did not complete the course. (Id.). She asked Defendant instead to issue an "Incomplete" and permit her to complete the remaining hours at a different practicum site. (Id.). Defendant denied this request. (Id.).

Plaintiff contacted Honey Lake on July 19, 2019, to inquire about the specific reasons for her termination. (Id. at ¶ 28). Honey Lake did not respond. Plaintiff alleges Defendant admonished her for unprofessional behavior for her attempt to communicate with Honey Lake. (Id.). On August 1, 2019, Plaintiff emailed Defendant's president asserting allegations of discrimination, retaliation, and harassment. (Id. at ¶ 29). The president referred Plaintiff to the human resources department. (Id.).

On August 16, 2019, Defendant proposed an "action plan" for Plaintiff's continuation in the master's degree program. (Id. at ¶ 30). The action plan required the following:

- maintenance of an "A," "B," or "S" in any course

- a cumulative GPA of 3.0

- audit and completion of BUS 390 Professional Communication and SWK 350 Work Practice with Individuals: General Practice I

- completion of RSC 507 Scholarly Writing

5

- completion of RCE 680 Counseling Practicum

- weekly meetings with an academic advisor by email, telephone, or in person

- commitment to studying at least three hours per week for each course

- request counseling for any course in which overall grade falls below "B" or "S"

- meet with professors when having difficulty in any course

- utilize tips provided by Academic Success

- follow academic guidelines, policies, and procedures

(Id. at ¶¶31-32; Id., Ex. A). The final provision of the action plan provided that if Plaintiff received a "C" or "U" or lower in any course she would not be permitted to complete her academic program or return to Defendant's university. (Id.).

Plaintiff interpreted the action plan as an effective dismissal from Defendant's program. (Id. at ¶ 30). She claims Defendant's imposition of additional course work that was not otherwise required to complete her degree was an act of discrimination and retaliation. (Id. at ¶¶ 30, 33). Plaintiff alleges Defendant's acts of disparate treatment, failure to provide reasonable accommodations, and failure to engage in the interactive process caused her mental, emotional, and financial damages. (Id. at ¶ 36).

6

## II.     LEGAL STANDARD

A motion for judgment on the pleadings is properly filed "[a]fter the pleadings are closed[,] but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (internal citations omitted); Cunningham v. Dist. Att'y's Office for Escambia Cty., 592 F.3d 1237, 1255 (11th Cir. 2010). In deciding a motion for judgment on the pleadings, the facts in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. Id. The court may consider documents attached to the pleadings. Horsely v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) (explaining that the standard for either a Rule 12(b)(6) or Rule 12(c) motion is "whether the count state[s] a claim for relief"). The complaint must contain sufficient factual information to state a claim for relief that is "plausible on its face." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). When the plaintiff provides enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

7

the complaint is "plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "Labels and conclusions" and a "formulaic recitation of the elements of a cause of action" are insufficient to raise a right to belief above the "speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

## III.   DISCUSSION

Defendant argues that it is entitled to judgment on the pleadings because Plaintiff's Amended Complaint fails to assert a basis for recovery for any alleged acts of discrimination or retaliation. The law is clear that the only relief available under Title III of the ADA is injunctive relief. As any relief under Title V shall be based on a purported violation of another title of the ADA, in this case Title III, Plaintiff's remedies under Title V are again limited to injunctive relief, which Plaintiff has failed to properly plead. Section 504 of the Rehabilitation Act also allows for limited recovery for any alleged acts of discrimination and specifically prohibits emotional distress and punitive damages. Accordingly, based on the facts alleged in the Amended Complaint, the only plausible claim Plaintiff may pursue is her claim for compensatory damages under the Rehabilitation Act.

### A.   ADA

#### 1.   Title III

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of

public accommodation." 42 U.S.C. § 12182(a). A plaintiff alleging Title III ADA discrimination must initially establish that (1) she is disabled; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against her within the meaning of the ADA. See Norkunas v. Seahorse NB, LLC, 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. § 12182(a)). Defendant does not dispute that Plaintiff's Amended Complaint generally sets forth the basic elements of a Title III ADA discrimination claim. Defendant argues Plaintiff's claim nevertheless fails because she seeks relief not afforded by the statute.

Plaintiff outlines her Title III claim in Count I of her Amended Complaint. (Doc. 9, ¶¶ 39-47). In summation, Plaintiff alleges that as a result of Defendant's discriminatory conduct, she has suffered

> emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.

(Id. at ¶ 47).

It is well established that these types of damages are not available under Title III. Rather, the only relief afforded under Title III of the ADA is injunctive relief. See Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1230 (11th Cir. 2021) (citing 42 U.S.C. § 12188(a)(1) (explaining that the remedies available to an individual under Title III are set forth in 42 U.S.C. § 2000a-3(a), which allows a

private right of action only for injunctive relief)). Plaintiff offers no meritorious argument to the contrary. Accordingly, Plaintiff may only recover under Title III for any acts of discrimination she alleges entitle her to injunctive relief.

Plaintiff maintains her Amended Complaint includes a claim for equitable and injunctive relief. Plaintiff's prayer for relief lists a demand for the following:

> (b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff[.]

(Doc. 9, p. 25). Plaintiff additionally requests entry of judgment "(d) . . . against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law." (Id.).

Defendant argues this general request that the Court require Defendant obey the law is not sufficient to state a claim for injunctive relief. "As the name implies, an obey-the-law injunction does little more than order the defendant to obey the law. [The Eleventh Circuit has] repeatedly questioned the enforceability of obey-the-law injunctions . . .," because they are broad, non-specific, and do not give the restrained party fair notice of what conduct risks contempt. S.E.C. v. Goble, 682 F.3d 934, 949 (11th Cir. 2012); Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1531 n.12 (11th Cir. 1996) ("A person enjoined by court order should only be required to look within the four corners of the injunction to determine what he must do or refrain from doing."). But review of the nature of any potential

10

injunction is premature at this stage of the litigation as it is "at least possible" that Plaintiff "could seek injunctive relief that would be specific and narrow enough that the parties would be afforded sufficient warning to conform their conduct." S.E.C. v. Graham, 823 F.3d 1357, 1362 n.2 (11th Cir. 2016).

Plaintiff's claim for injunctive relief remains subject to dismissal, however, because, as Defendant argues, Plaintiff has not sufficiently alleged a threat of future harm and, therefore, lacks standing. To establish standing, "a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the defendant's actions; and (3) that 'the injury will be redressed by a favorable decision.'" Kennedy, 998 F.3d at 1229 (quoting Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001)). An injury-in-fact is the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Because injunctions regulate future conduct, a plaintiff seeking injunctive relief has standing only if she also shows "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." Shotz, 256 F.3d at 1081 (emphasis in original). In other words, for a plaintiff seeking prospective relief to have standing, she must demonstrate "a sufficient likelihood that [she] will be affected by the allegedly unlawful conduct in the future." Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation marks and citation omitted).

11

"In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimation by the defendant." Shotz., 256 F.3d at 1081 (concluding plaintiff lacked standing where complaint contained only past acts of discrimination and no facts suggesting likelihood of future discrimination); see also Wooden v. Bd. of Regents of Unv. Sys. of Ga., 247 F.3d 1262, 1284-85 (11th Cir. 2001) (finding current university student lacked standing where there was no evidence he intended to re-apply for admission and, therefore, no likelihood of future exposure to discriminatory admissions practices). On a motion to dismiss for lack of standing, a court must evaluate the facts as alleged in the complaint and may not "speculate concerning the existence of standing or 'piece together support for the plaintiff.'" Cone Corp. v. Fla. Dept. of Transp., 921 F.2d 1190, 1210 (11th Cir. 1991) (citation omitted).

Plaintiff's Amended Complaint fails to allege an immediate and real threat of future injury. Contrary to Plaintiff's assertion in her response to Defendant's present motion, nowhere in Plaintiff's Amended Complaint does she allege any intention to seek reinstatement in Defendant's master's degree program or any other forward-looking relief. (Doc. 48, p.10). Plaintiff therefore lacks standing to seek injunctive relief under Title III of the ADA. The Court accordingly **GRANTS** Defendant's motion for judgment on the pleadings and dismisses Plaintiff's Title III ADA claims with prejudice.

12

### 2.   Title V

Title V of the ADA forbids retaliatory discrimination against an individual who has "opposed any act or practice made unlawful by this chapter or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Title V provides no independent remedies or procedures. Rather, any redress for a violation of Title V is predicated on a violation of another ADA title and the remedies afforded under that title. See 42 U.S.C. § 12203(c).[2]

For Plaintiff to recover under Title V, she first must establish entitlement to relief under Title III. As discussed above, however, Plaintiff has not properly pled a claim for relief under Title III. She therefore cannot recover under Title V. The Court accordingly **GRANTS** Defendant's motion for judgment on the pleadings and dismisses Plaintiff's claim under Title V of the ADA with prejudice.

### B.   Rehabilitation Act

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under any program or activity receiving Federal financial

---

[2] Plaintiff cites to a number of cases for the proposition that compensatory damages are available for an ADA retaliation claim. Plaintiff's argument confuses Title I and Title III of the ADA. Title I forbids discrimination against a disabled individual in the terms and conditions of her employment and provides remedies that are not available under Title III. See 42 U.S.C. § 12112 and § 12117(a).

assistance." 29 U.S.C. § 794(a). Remedies for violations of § 504 are the same as those available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. See Barnes v. Gorman, 536 U.S. 181, 185 (2002). These remedies include compensatory damages. Id. The Supreme Court has explicitly held, however, that neither emotional distress nor punitive damages are available under § 504. See Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562, 1576 (2022).

The nature of the relief sought by Plaintiff in relation to her § 504 claim is not abundantly clear from her Amended Complaint. Nevertheless, the Court finds it plausible, based on the facts alleged, that should Plaintiff establish that Defendant discriminated against her in violation of § 504, she may be entitled to recover monetary damages, including lost tuition. Plaintiff shall not, however, be permitted to recover emotional distress or punitive damages in relation to her § 504 claim.

### C.    Request to Amend

Plaintiff tacitly acknowledges the deficiencies in her pleadings. Plaintiff asks the Court three times within her response brief for leave to file a second amended complaint, claiming "in no event should a judgment be rendered against her because a simple amendment could quickly cure any perceived deficiencies." (Doc. 48, p. 13; see also p. 9, 11). Plaintiff offers no explanation

how a subsequent amendment will resolve any of the pleading deficiencies noted by Defendant.

Plaintiff's request for leave to file a third complaint is not properly raised in a response brief. "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999). To request leave to file an amended complaint, the plaintiff must present a written motion either setting forth the substance of the proposed amendment or attaching a copy of the proposed amendment. See Fed. R. Civ. P. 7(b)(1). When a plaintiff fails to request leave to amend properly, and has adequate time to do so, it is within the court's discretion to deny leave to amend. See Long v. Satz, 181 F.3d 1275, 1279-80 (11th Cir. 1999).

Plaintiff here had adequate time to file a proper motion for leave to file a third amended complaint. Plaintiff failed to do so. The Court therefore **DENIES** Plaintiff's request for leave to amend her complaint.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Judgment on the Pleadings (Doc. 41). The Court dismisses with prejudice Plaintiff's claims arising under Title III and Title V of the ADA. The Court finds Plaintiff has stated a plausible claim for compensatory damages under § 504 of the Rehabilitation Act. However, Plaintiff shall not be

allowed to recover emotional distress or punitive damages as part of her Rehabilitation Act claim.

**SO ORDERED** this 1st day of March, 2023.

_**s/ Hugh Lawson**_____
**HUGH LAWSON, SENIOR JUDGE**

aks